SELDON E. McAFEE ET AL V. TRAVIS GAS CORPORATION ET AL.

No. 7646. Decided June 4, 1941.
Rehearing overruled July 16, 1941.
(153 S. W., 2d Series, 442.)

*Albert W. Searcy, Kemp, Lewright, Dyer, Wilson & Sorrell,*
of Corpus Christi, for plaintiffs in error.

The evidence being sufficient to support the jury's findings
that the defendant in error, Travis Gas Corporation, was negli-
gent, that such negligence proximately caused plaintiff in error
McAfee's injuries, that the act of the third party was not the
sole proximate cause of the injuries, and that the plaintiff in
error was not guilty of contributory negligence, the court erred

in entering judgment non obstante veridicto for said defendant. Texas Public Service Co. v. Armstrong, 37 S. W. (2d) 294; City of Wichita Falls v. Crummer, 71 S. W. (2d) 583; 3 Tex. Jur. 1049.

*T. H. Burruss,* and *D. S. Purl,* of Corpus Christi, and *Coleman Gay,* of Austin, for defendants in error.

Since Travis Gas Corporation's defective gas line constituted at most a source of potential danger which required the application of flame to convert it into an actual danger, and since McAfee was as well able to foresee the striking of a match by defendant's representative as was Travis Gas Corporation, there was nothing to submit to a jury, because, if defendant Travis Gas Corporation as a reasonable prudent man ought to have forseen the acts of its representative, then McAfee as a reasonably prudent man ought to have foreseen it, and McAfee was guilty of contributory negligence. Jones v. Beck, 109 S. W. (2d) 787; Magnolia Petroleum Co. v. Winkler, 40 S. W. (2d) 831; Texas & Pac. Ry. Co. v. Bigham, 90 Texas 223, 38 S. W. 162.

MR. JUSTICE CRITZ delivered the opinion of the Court.

This suit was filed in the District Court of Nueces County, Texas, by Seldon E. McAfee against Travis Gas Corporation, D. C. Reed, E. H. Perry, and the copartnership of Reed & Perry to recover damages for personal injuries alleged to have been received by McAfee as the result of the negligence of the defendants, and each of them. McAfee was injured as the result of a gas explosion. At the time of his injury McAfee was an employee of Federal Petroleum Company. Such employer carried workmen's compensation insurance with the Texas Employers' Insurance Association. This insurer paid McAfee $1,777.08 compensation, and, as provided for by our Workmen's Compensation Law, intervened in this suit and asked to be reimbursed out of any recovery awarded McAfee to the extent of the compensation it had paid to him.

The case was finally tried in the district court, with the aid of a jury. At the close of the evidence all defendants above named filed separate motions for an instructed verdict. The court sustained the motions of D. C. Reed, E. H. Perry, and the firm of Reed & Perry, and so instructed the jury. The jury returned the verdict as directed.

After the above events the court submitted the case as against Travis Gas Corporation to the jury on special issues. The findings of the jury are fully detailed in the opinion of the Court of Civil Appeals. In the interest of brevity we will not repeat them here. It is sufficient to say that such findings would entitle the plaintiff to a judgment against Travis Gas Corporation unless there is some reason why they should not be given effect.

After the above-mentioned verdict was returned into court, Travis Gas Corporation filed a motion for judgment non obstante verdicto. Such motion was heard and granted by the court. As a result of all the above proceedings the court entered a final judgment against McAfee, and for all of the defendants above named. On appeal to the Court of Civil Appeals by McAfee and Texas Employers' Insurance Association, the judgment of the district court was affirmed. 131 S. W. (2d) 139. McAfee and the insurance association bring error.

1 Under the record above detailed we must regard the evidence contained in this record in its most favorable light for McAfee. This is because of the instructed verdict and judgment non obstante veredicto above detailed.

At this point we deem it necessary to revert to and detail the facts as established by this record. At the time of this accident McAfee was an employee of Federal Petroleum Company. A gas line belonging to Travis Gas Corporation ran along the edge of the premises of Federal Petroleum Company. Such gas line connected with a gas well belonging to D. C. Reed and E. H. Perry. The gas line was used for the purpose of conducting gas to various customers of Travis Gas Corporation. One of such customers seems to have been Federal Petroleum Company. It appears that this gas line was in bad condition, and had been leaking gas from openings therein for many months. The owner had notice thereof. The gas was leaking into the open air. Some of these leaks were in the portion of the pipe line running alongside the premises of Federal Petroleum Company. On the day McAfee was injured one Joe Woods appeared on the premises where McAfee was employed and said something to him. McAfee then went with Woods to where the pipe line was leaking and was in the act of pointing out such leaks to Woods when Woods struck a match on the sole of his shoe to light a cigarette. The blaze from the match

ignited the escaping gas, causing an explosion. As a result of such explosion McAfee was injured. This suit followed.

It appears that the gas pipe line involved in this case ran along the north line of the warehouse of the Federal Petroleum Company, but we are not sure whether or not it ran across the premises of Federal Petroleum Company. It is established, however, that the pipe line was approximately on the line of Federal Petroleum Company's premises, and the leaking gas escaped into the air over such premises. When Joe Woods appeared on the premises of Federal Petroleum Company where McAfee was working, he said something to McAfee and the two went together to where the leaks in the pipe line were. Woods had previously been on the premises of Federal Petroleum Company on several occasions "Either to collect or to look for something about that line." There is ample evidence to show that the pipe line owner or operator had notice of the bad condition of the pipe line. We gather from the testimony of J. D. McIntosh that at the time of this accident he was general superintendent for all of defendants in error. He testified that he had succeeded Mr. John Bartlett in that capacity about ten days or two weeks before this accident. McIntosh had charge of the operation of both the gas well and the pipe line above mentioned. Woods was working at the well when McIntosh took charge. When McIntosh took over, as above stated, he countermanded no instructions which Bartlett may here given Woods. McIntosh, however, did give Woods definite instructions. He had instructed Woods to stay at the well. Woods was supposed to be at the well during the daytime, and he was to receive reports of leaks in the pipe line. Woods was supposed to close off the line in case of an emergency, and a leak might be an emergency.

2    From all the above facts we think there is probative evidence in this record tending to show that in inspecting this leaky pipe line on the occasion of McAfee's injuries, Joe Woods was acting as the agent or servant of the owner or operator of this pipe line. The evidence we have recited certainly tends to show that he, Woods, was performing a service for such owner or operator. It is the settled law of this State that, in a negligence action, in which the defendant's liability to the plaintiff depends upon proof of master and servant relationship between the defendant and a third person, such relationship is prima facie established by showing that the alleged servant was performing services peculiar to the defendant's business

or affairs on or about the latter's property. 29 Tex. Jur., p. 410, sec. 241; Hazen v. Crucible Steel Co. 132 Ohio St. 453, 9 N. E. (2d) 143, 112 A. L. R. 333, and annotation, p. 337; Ochoa v. Winerich Motor Sales Co. 127 Texas 452, 94 S. W. (2d) 416. We here refer to the authorities cited in the Ochoa case, supra, p. 418. It follows that in this case we have McAfee pointing out the leak in this gas line to an agent or servant of the owner, when such agent or servant struck a match which ignited the escaping gas, causing an explosion which injured McAfee.

McAfee testified as a witness in his own behalf. Reduced to narrative form, his testimony, in substance, is as follows: That he walked with Woods to where the gas leaks in the pipe line were; that such line had been leaking gas for two years; that they (we) did everything but fix such leaks; that they (we) naturally considered such leaks very dangerous; that he thought something like this explosion might happen, with natural gas shooting up all around the place; that he anticipated an explosion was liable to happen; that he knew this at the time he went to this pipe line with Joe Woods; that he felt obligated to his company to do what he did in showing these leaks to Woods; that he did not know that the thing which happened was going to happen, or he would not have gone there; that he realized for two years that there was a dangerous condition there, and in spite of that he voluntarily went out and exposed himself to such danger.

As to the effect of the above testimony, the Court of Civil Appeals holds:

"Appellant argues that he, as a reasonably prudent man, could not be expected to forsee that Joe Woods, a man employed at the gas well, and who, according to his own statement, came to investigate the leaks, would be so thoughtless as to strike a match near the ground in the proximity of the gas leaks at the very moment that appellant was leaning down with his fact near the ground pointing out the leak. The answer to this contention is that the operators of the gas line are in law not presumed to be any more prudent than McAfee, and if he was unable by the use of ordinary care to foresee that Joe Woods was going to be guilty of such an unexpected act, then by the same token the operators of the gas line could not be expected by the use of ordinary care to foresee that Woods was going to so conduct himself. Either the appellee was not

guilty of negligence proximately causing the injuries to appellant, or appellant was guilty of negligence proximately causing his own injuries. It is not necessary to here decide which, as appellant could not recover in either event."

Further in the opinion of the Court of Civil Appeals it is said:

"If the proof had shown that Joe Woods was the agent of the operator of the gas line and acting in the course of his employment, quite a different case would have been presented."

**3** Under the record we have detailed, we think that we do have before us the very case that the Court of Civil Appeals holds that we do not have. In other words, we hold that there is evidence in this record tending to show that at the time of this explosion Joe Woods was the servant or agent of the owner or operator of this gas pipe line, and that Joe Woods was acting in the course of his employment in inspecting the same. It follows that we here have a case in which McAfee was pointing out the leaks in this pipe line to an agent of the owner or operator of the pipe line, which such agent was acting within the scope of his duties in inspecting the same. Under such circumstance, Woods, the agent or servant, struck a match, which caused this explosion and McAfee's resulting injuries.

We interpret the opinion of the Court of Civil Appeals to hold that because McAfee went to the place where this pipe line was leaking, with full knowledge of the facts, and with full knowledge that such leaking pipe line was an object of danger, he was guilty of contributory negligence as a matter of law. We are unable to agree to such a conclusion. The mere fact that a person may expose himself to a danger will not preclude a recovery. In order to preclude a recovery the danger must be such that a person of ordinary prudence under like circumstances would not subject himself to it. 28 C. J. 598. The mere fact that a person may participate in an operation attended by some latent danger will not render him guilty of contributory negligence as a matter of law. It is the established rule in this State that even where a person has knowledge, actual or imputed, of a defect, a question of fact as to negligence is presented unless it can be said, as a matter of law, that a person of ordinary care would not have incurred the risk. Gulf, C. & S. F. R. Co. v. Gasscamp, 69 Texas 545, 7 S. W.

227; Gulf, C. &. S. F. R. Co. v. Irick (Civ. App.), 116 S. W. (2d) 1099; 30 Tex. Jur., p. 764, sec. 96; Northcutt v. Magnolia Petroleum Co. (Civ. App.), 90 S. W. (2d) 632 (writ refused).

4. In the Gasscamp case, supra, the opinion is by Judge Gaines. The opinion discloses that the plaintiff was injured while crossing a bridge. The bridge was located upon a public road at a point where the road crossed the track of the railway company. It was the duty of the railway company to keep the bridge in repair. The bridge was in a bad state of repair and dangerous to use. Plaintiff knew the dangerous condition of the bridge, but in spite of such knowledge attempted to cross it on horseback. A plank of the bridge, which was loose and rotten, became displaced and frightened plaintiff's horse. This caused plaintiff to be thrown onto the railway track, thereby inflicting on him serious injury. Plaintiff was on his way to town, and the bridge was on the only road he could get there on. The railway company contended that plaintiff was guilty of negligence, as a matter of law, in attempting to cross a bridge he knew was in a defective and dangerous condition. The jury acquitted the plaintiff of negligence. This Court, under the above facts, held that even though the plaintiff knew the bridge was in a dangerous condition, and that it was dangerous to cross it, still it was not negligence, as a matter of law, for him to risk such danger unless it could be further said that a person of ordinary prudence would not have incurred the risk. We quote the rule as announced in the opinion:

"* * According to the rule in this Court, in order that an act shall be deemed negligent per se, it must have been done contrary to a statutory duty, or it must appear so opposed to the dictates of common prudence that we can say, without hesitation or doubt, that no careful person would have committed it. * *"

It is our opinion that the case at bar comes directly under the rule announced in the Gasscamp case, supra. Certainly, if the operator of this gas pipe line had notice that it was leaking, under the facts above detailed, the jury was amply justified in finding negligence and proximate cause against it. Gas is a very dangerous substance. When a gas company has notice of a break in its pipe line, it must use due care and diligence to prevent the escape of gas therefrom. 21 Tex. Jur., pp. 11 to

15; McClure v. Hoopeston Gas & Elec. Co. 303 Ill. 89, 135 N. E. 43, 25 A. L. R. 250. See annotations 25 A. L. R. 262.

Also under the fact detailed, the question as to the negligence of McAfee was a question for the jury. The mere fact that he know about these leaks and knew that they constituted a dangerous condition, would not, under the facts of this record, render his act of showing them to Joe Woods negligence as a matter of law.

5  It is the rule that those who distribute a dangerous article or agent owe a degree of protection to the public proportionate to and commensurate with the dangers involved. Texas Pub. Serv. Co. v. Armstrong (Civ. App., writ refused), 37 S. W. (2d) 294, and authorities there cited. We think it is the generally accepted rule as applied to torts that "If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability." Restatement of the Law of Torts, Vol. 2, p. 1184, sec. 439. Stated in another way, "The intervention of an unforseen and unexpected cause is not sufficient to relieve a wrongdoer from consequence of negligence, if such negligence directly and proximately co-operates with the independent cause in the resulting injury." Texas Power & L. Co. v. Culwell (Com. App.), 34 S. W. (2d) 820; Texas Public Serv. Co. v. Armstrong, supra.

Certainly there is ample evidence in this record to support a finding that Travis Gas Corporation was negligent in permitting this pipe line to remain in a leaky condition for the length of time shown by this record. Also there is ample evidence that such negligence continuously operated until it contributed to bring about McAfee's injury. We think that under the rule above announced it cannot be said that the act of Joe Woods in striking the match operated, as a matter of law, to protect Travis Gas Corporation from liability, even though it should be admitted that he was a stranger to the parties herein. Of course, if Joe Woods was an agent or servant of Travis Gas Corporation acting within the scope of his employment in inspecting or examining this pipe line, his act in striking the match which caused this explosion would be directly chargeable to the pipe line corporation.

**6** As already shown, on the occasion of this explosion Joe Woods appeared on the premises of Federal Petroleum Company and had a conversation with McAfee. Immediately after such conversation McAfee went with Woods to this leaky pipe line, and was in the act of pointing out to Woods such leaks when Woods struck the match which caused this explosion. At the trial McAfee proposed to prove that on the occasion in question Woods said that he was an employee of the people who owned the pipe line and asked McAfee to show him the place where the leaks were. The trial court excluded such testimony. We think this was error. It is the law that agency cannot be shown by the declarations or statements of the alleged agent or servant, standing alone; but where there is evidence sufficient to show the fact of agency or employment prima facie, declarations or statements of the alleged agent are admissible in corroboration,—and especially is this the rule where such declarations or statements constitute a part of the res gestae of the transaction in question. 17 Tex. Jur., p. 515, sec. 228, Id., p. 630, sec. 265. Since we hold that there is evidence in this record to show prima facie that Joe Woods was the agent or servant of Travis Gas Corporation, independent of what he said on the occasion of this explosion, it follows that we further hold that the trial court errod in excluding the testimony above indicated. We pass on this question in view of the fact that the disposition we shall make of this appeal may result in another trial in the district court.

There is another reason why we think that the statements above detailed, made by Joe Woods to McAfee just prior to this accident, were admissible. It was charged by the defendant that McAfee was guilty of contributory negligence in knowingly going into this place of danger. Such a charge raised the issue as to whether or not McAfee, under the surrounding circumstances, acted as a reasonably prudent person would have acted in showing the leaks in this pipe line to Woods. In such a case the information, whether true or false, on which McAfee acted at the time, was admissible as original and material evidence bearing on the question of contributory negligence. Jones on Evidence, Civil Cases (3d ed.), pp. 526-527, sec. 330; McGowan v. McGowan, 62 Texas 657; 17 Tex. Jur., p. 614, sec. 257. We quote the rule as announced in Jones on Evidence, supra:

"Where the question is whether a party has acted prudently, wisely, or in good faith, the information on which he acted,

whether true or false, is original and material evidence, and not hearsay."

We find no evidence in this record which would justify a judgment against any of these defendants, except Travis Gas Corporation.

As between plaintiff McAfee and the defendants D. C. Reed, E. H. Perry, and the firm of Reed & Perry, the judgments of the Court of Civil Appeals and the district court are both affirmed. As between the plaintiff McAfee and the defendant Travis Gas Corporation, the judgments of the Court of Civil Appeals and the district court are both reversed, and this cause is remanded to the district court with instructions to enter judgment nunc pro tunc on the verdict of the jury, in favor of McAfee and against Travis Gas Corporation. After the entry of such judgment, conditions and rights as between McAfee and Travis Gas Corporation will be the same as though the judgment of the district court here directed had been duly entered without this appeal. Travis Gas Corporation may present its motion for new trial. The trial court may either grant or refuse such motion, as it may determine. If the trial court should overrule such motion, Travis Gas Corporation may have its appeal. Of course, our judgments in this appeal is final as to D. C. Reed, E. H. Perry, and the firm of Reed & Perry. Travis Gas Corporation will pay all costs of this appeal in all courts.

Opinion delivered June 4, 1941.

Rehearing overruled July 16, 1941.